ARCHIBALD HOOD, appellant, *v.* WILLIAM MOORE *et al.*, appellees.

### *Appeal from Washington.*

A sheriff purchased of a defendant in an execution which he held in his hands for collection, certain property, and undertook to satisfy the judgment out of his own funds: *Held*, that this arrangement did not discharge the judgment, it not having been made by the direction or consent of the plaintiff in such execution.

A sheriff is the agent of the law in the performance of his official duties, and not of the parties interested. He must follow the direction of his precept, that being his only authority. Any private arrangement between him and a debtor, without the sanction of the creditor, is illegal and not binding on the latter; and where a debtor enters into such an arrangement with a sheriff, and has parted with his property, his only remedy is against the sheriff to recover the value of the property so received by him.

BILL IN CHANCERY for an injunction, &c. in the Washington Circuit Court, filed by the appellant against William Moore, James Smith, John H. McElhanan and John N. Vernor. The case was heard on bill, answers, replications and depositions at the May term, 1847, before the Hon. Gustavus P. Koerner, when the bill was dismissed and the injunction, previously granted, dissolved.

It was alleged, that Moore recovered a judgment against the complainant in the Circuit Court aforesaid in 1842, for $545·52, and costs, upon which execution was issued in December of that year, and levied in the month of March

1843, upon the lands of the complainant, to wit: The west half of the south east quarter, and the west half of the north east quarter of section twenty seven (27), and the east half of the south west quarter of section twenty six (26), all in township one (1) south, and range four (4) west. During the month next ensuing, a second execution was issued and levied upon the same lands, and in the month of January and February of the next year, a third execution was issued and levied thereon, and likewise in September of the same year, a fourth execution, when the lands were sold to James Smith for $200, who credited the same on the said judgment without paying anything to the sheriff therefor.

In January, 1845, a fifth execution was issued and subsequently levied on other lands of the complainant, to wit: The north west quarter of the south west quarter, the south east quarter of the north west quarter, the south west quarter of the north east quarter, and the north east quarter of the south west quarter, all in section twenty two (22), in township three (3) south, and range three (3) west, which were also sold to the said Smith for $100.

In May, of the same year, a sixth execution was issued, and, in August following, levied upon still other lands of the complainant, to wit: The north east quarter of the south west quarter, and the north west quarter of the south west quarter of section thirty (30), and the north half of the north west quarter of section twenty six (26), the west half of the north east quarter of section twenty (20), and the south east quarter of the south east quarter of section twenty seven (27), in township three (3) south, and range four (4) west.

A seventh execution was afterwards issued and placed in the hands of John N. Vernor, the sheriff of said county, and this execution is sought to be enjoined.

The bill charged that Smith had acted throughout the proceedings as the agent of Moore; that no money passed on either of said sales to said sheriff; that on the 11th April, 1845, Hood paid and satisfied said judgment, while the sheriff had the execution, issued January 23, 1845, in his hands; that the sheriff at the time of giving the receipt was acting

under the directions of Smith, agent as aforesaid, and was by him authorized and empowered to receive payment, &c., and that, at the time of payment, Hood was ignorant that any sale of his property had taken place; that since the sale Smith had caused the sheriff's successor, Vernor, to execute a deed to him for the lands first sold, and that he claims and intends to demand a deed for the lands afterwards sold. The bill then prayed for an injunction against the execution issued, that the sales might be set aside, and for general relief.

Smith answered the bill, admitting the recovery of judgment by Moore and the issuing of executions and sales as alleged in plaintiff's bill, but denied that he gave any order to the sheriff to return any of the executions; alleged that Moore resided in South Carolina; and that he, Smith, has been Moore's agent throughout the proceedings in the case; admits that no money passed from him to the sheriff on said sales; that he caused the last execution to issue, &c., and says that he does not admit or believe that Hood paid the judgment as alleged by him; does not know that the sheriff executed said receipt, or while he had the execution in his hands; denies that he ever gave the sheriff any authority to give said receipt, or any authority in reference to said claim; insists that Hood knew of, and permitted said sales of said land; admits that he has received a deed for the land sold at the first sheriff's sale, and intended to claim a deed for the land sold at the second sale; alleged that he believed there was some sort of an understanding between Hood and McElhanan, that McElhanan should take property from Hood and redeem said lands or settle said debt for him, but denies that he, Smith, was a party to said arrangement, if any such there was; that he, Smith, purchased the land in good faith and accounted to Moore for the amount by him bid, and the only amount of money ever paid by said McElhanan on said execution was $26·34.

The bill was taken for confessed as to Moore and Vernor. McElhanan answered the bill, admitting whatever Smith

admitted, and denied what he denied; denied further, that he received the amount set out in his receipt or any other amount; but states that in the year 1843, he bought land of Hood, and in 1844, sold the land to B. D. Hunter, and that he, McElhanan, gave receipts to complainant covering the whole amount of the judgment; and the amount of the receipts was to be in part payment of the said lands, and the deed to be made to Hunter, but Smith knew nothing of the receipts until the spring of 1845, when Smith gave him, McElhanan, notice in writing of his intention to apply to the Judge of said Circuit Court, for a rule against him to show cause, &c., why he had not paid over the money collected, &c. After said notice he went to complainant, took back the three receipts, and gave the one receipt in question, with the agreement that he was to sell the remaining lands levied upon, and redeem the same for complainant.

The following is the substance of the depositions taken in the case:

Robert T. Harris, for the complainant, testified, that he was deputy sheriff for McElhanan, from September 1844, to September 1845; that McElhanan told him, witness, after his return from the south, that Smith had agreed to wait with him, until he, McElhanan, had returned from the south with horses, and also, that he intended to make witness acquainted with the arrangement before he started south, so that witness would not have gone on with the execution against Hood, but entirely forgot it; that Smith told witness that a man had been at his mother's, and left word, that he, Smith, had better attach McElhanan's horses before he left with them; that Smith said he still believed McElhanan would settle the demand when he returned home, if he had good luck. Harris also proved the handwriting of McElhanan to a letter to Mr. Bond, one of complainant's attorneys, in relation to this case. In this letter, McElhanan said: "I understand that they are trying to make it out all fraud between Hood and myself. I received full payment from Hood as my receipt will show. I sold the pay I received from Hood for horses.

Smith agreed to wait till I returned from the south, and it was to be applied to the executions. This was a contract between Smith and myself.

John H. McElhanan."

On cross examination Harris stated that when he went with an execution to complainant, he asked witness if Mc-Elhanan had not informed him of the arrangement made with McElhanan, and then produced McElhanan's receipts, as many as three, for about the amount due; that the receipts were of different dates; that McElhanan told witness he got horses from complainant, and gave those receipts against the execution, and when he returned from the south he would then pay off those executions. On re-examination he stated, that complainant told him in the conversation before referred to, that he had paid off the judgment. The handwriting of McElhanan was proved by another witness.

Gabriel S. Jones testified, that McElhanan told him that complainant had paid him the full amount of the said execution, and he had given him a receipt; that he, McElhanan, had seen Smith, and Smith was satisfied and agreed to wait till he, McElhanan, came back from the south to pay the money over to him, Smith. He also proved the handwriting of McElhanan to the receipt in question, mentioned in the bill.

Robert Walker also testified to the handwriting of Mc-Elhanan to the receipt; that before McElhanan went south, he said that Smith had agreed to wait upon him for the money till he could make it out of horses; that at various times, he told witness that complainant had made payments for which he had given receipts and afterwards, that he had paid him in full, and that he, McElhanan, had taken up the small receipts and given a receipt in full. On cross examination, he stated that McElhanan went south in the fall of 1844; that he never heard McElhanan say he got horses of complainant; that he got horses from Hunter, but does not know on what account; thinks it was just before McElhanan went south, that he stated the judgment had been settled.

T. H. Galloway testified, that McElhanan told him that

complainant had paid the execution in horses with Smith's assent, to be accounted for on his return from the south; that he could not say whether it was Smith's assent to the receipt, or his assent to await McElhanan's return from the south; and that this occurred before McElhanan went south.

The following is the substance of the defendants' depositions:

James Burns testified, that he had heard complainant say in the presence of S. Goodner, that he had McElhanan's receipt in full, and had paid him off and let him have some horses; that he did not recollect with what he said he had paid him off, only the horses; said that he had let him have some horses; that his understanding was, that McElhanan was to pay off Smith, the agent of Moore, with the sale of the horses in complainant's place; that the horses were not sold on execution at public sale, and did not know what became of them, or whether the horses were levied on or not. On cross-examination he stated, that he understood from complainant in the conversation, that he had paid off the execution to McElhanan as sheriff, that he complained of their selling his land after he had paid the judgment.

Salem Goodner stated that complainant remarked that he had been treated very wrong by McElhanan; that he had paid every dollar of that execution off; that he had let him have horses and property; that McElhanan promised to redeem the lands sold; that he understood the property was taken by private arrangement, and McElhanan was to pay off the execution; that he, Goodner, was a security on the bond of McElhanan as sheriff. Exception to the deposition of Goodner on the ground of interest was taken, which was overruled.

The appellant assigned for error:

1. The Court erred in overruling the exception to the deposition of Salem Goodner;

2. In dissolving the injunction and dismissing the bill;

3. In not setting aside the sale of the land by the sheriff; and

4. In not making the injunction perpetual.

Hood *v.* Moore *et al.*

*W. H. Underwood,* for the appellant.

1. An execution authorizes the officers to take the property of the defendant therein to satisfy the same. The word levy means to take under a *fi. fa.* After personal property is taken, the judgment is discharged until the same is disposed of and found insufficient, and the judgment creditor cannot proceed against other property, even if the officer squanders the property levied on. *Gregory* v. *Stark,* 3 Scam. 612; *Hoyt* v. *Hudson,* 12 Johns. 207; *Ladd* v. *Blunt,* 4 Mass. 403. When the defendant in execution has turned out to the officer his personal property, he does all the law requires of him, and if the officer converts or disposes of the same contrary to law, the plaintiff in execution has his remedy against the officer. *Armstrong* v. *Garrow,* 6 Cowen, 467.

The cases cited by the attorney for appellee are where the officer took promissory notes, or effects not liable to execution, and therefore cannot be regarded as properly turned out by the judgment debtor, and which the officer had no right to take on execution.

2. The answer of McElhanan, that he took land in discharge of the execution, is impeached by his own confessions, by his receipt and by Goodner and Burns, the witnesses of Smith.

3. The answer of Smith does not pretend to deny positively the payment of the judgment to the sheriff, nor the giving of the receipt. This only threw the *onus* on complainant of proving the payment of the money by the one witness. *Clark's Ex'rs.* v. *VanRiemsdyck,* 3 Cowen, 325–6; 4 Bibb, 357; 6 Har. & Johns. 292; 3 Barb. & Har. Dig. 386, §§ 22, 27, 43; Ib. 388, §§ 5, 8. The receipt established this fact, and is not outweighed by the loose and unsatisfactory testimony of Smith's witnesses, contradicted as it is by the fact that Smith was about proceeding against the sheriff, for failing to pay over the money collected, and by his remark that he believed the sheriff would pay over the same on his return from the south.

*L. Trumbull,* for the defendants in error.

A sheriff has no right to receive anything except money, gold and silver coin, in payment of an execution, and if he do so, and return the execution satisfied, the plaintiff is not bound by his acts, but may have the satisfaction set aside and a new execution awarded. Nor can a sheriff settle an execution, so as to bind plaintiff therein, by taking from the defendant a promissory note, and agreeing himself to pay plaintiff, nor by having a credit entered upon his note to defendant. *Bank of Orange Co.* v. *Wakeman,* 1 Cowen, 46; *Mumford* v. *Armstrong,* 4 do. 553; *Armstrong* v. *Garrow,* 6 do. 465; *Griffin* v. *Thompson,* 2 Howard's (U. S.) R. 244; *Callett* v. *Alexander,* 4 Howard's (Miss.) R. 404; *Planter's Bank* v. *Scott,* 5 do. 246.

The Opinion of the Court was delivered by

TREAT, J. The principal question in this case is, whether the amount due on the judgment was paid to the sheriff, as asserted by the complainant in his bill, and acknowledged by the sheriff in his receipt. The charge of payment is denied by both Smith and the sheriff in their answers. The latter alleges that he purchased lands of the complainant, and gave the receipt against the execution in part payment. It is apparent from the whole case that no money really passed to the sheriff; but that, in point of fact, the sheriff purchased property of the complainant, and in consideration thereof, undertook to satisfy the judgment out of his own funds. It is not shown that this arrangement was made by the direction of Smith or with his consent. Did it operate as a legal discharge of the judgment? We unhesitatingly say that it did not. A creditor has the right to require payment of his judgment in the lawful money of the country. The force and operation of an execution is to make the money out of the property of the debtor. The writ is directed to the sheriff as the agent of the law, and not as the agent of the parties; and his powers and duties under it are plain and specific. He is commanded to make the amount

of the judgment in money, and pay it over to the plaintiff. The writ is his only authority, and he is bound to execute it in the due course of law.  If the money is not voluntarily paid, he must proceed and make it by the seizure and sale of the defendant's property.  Any private arrangement made between the officer and the debtor, without the sanction of the creditor, is illegal, and not binding on the latter.

A reference to a few authorities will show that such is the law.  In the case of *Griffin* v. *Thompson*, 2 Howard's (U. S.) R. 244, where the marshal indorsed on the execution that he had received payment in bank notes, the Court refused a motion of the defendant to have satisfaction entered on the judgment, and also refused to quash a second execution issued on the judgment.  In the case of the *Bank of Orange County* v. *Wakeman*, 1 Cowen, 46, it was decided that the sheriff's taking a negotiable note for the amount of an execution in his hands, would not operate as a payment of the judgment, even though he had returned the execution satisfied, and the note was afterwards paid by the defendant to a third person, to whom it had been transferred.  In *Armstrong* v. *Garrow*, 6 Cowen, 465, where the sheriff took a promissory note in satisfaction of a *ca. sa.*, and discharged the defendant, it was held that the creditor might take out a new execution, or sue the sheriff for an escape.  In *Codwise* v. *Field*, 9 Johns. 263, where the officer was indebted to the defendant, and gave him a receipt in full of the execution, agreeing with the defendant to pay the plaintiff, the Court decided that there was no satisfaction of the judgment.  In this case, the creditor was at full liberty to charge the sheriff with the amount due on the judgment, or to disregard the receipt which had been given and procure another execution.

It is insisted that the sales on the executions should be set aside, on the ground that several tracts of land were sold *en masse*.  There is no evidence in the record that such was the fact.  It is not even so charged in the bill.  The defendants were not called on to answer or explain such an allegation.  The presumption is, if we may presume anything

favorable to this officer, that the sheriff performed his duty by exposing the lands for sale in separate parcels.

There is no occasion to determine whether the witness, Goodner, was incompetent on the score of interest, for laying his testimony entirely out of view, the complainant would not be entitled to the relief sought.

This may be a case of much hardship on the complainant, but he has no just cause to complain of the judgment creditor, to whose agent no wrong can be imputed. His remedy is against the sheriff to recover the value of the property received by him.

The decree of the Circuit Court is affirmed with the costs of this writ of error.

<div align="right">

*Decree affirmed.*